Brockenbrough, J.
This is another case in which the question is whether the sale of land is a sale in gross or by the acre.
There is no doubt that where an estate is expressly soW at a certain price by the acre, and there is a deficiency in the number of acres conveyed, the purchaser will be entitled to a compensation for that deficiency. Sugden p. 230. quoting 2 Eq. Ca. Abr. 688. pl. 1.
So too where the land is neither bought nor sold expressly and professedly by the acre, but both parties, in fixing the price for the land, have regard to the quantity which they suppose the estate to consist of, the same rule as to liability for deficiency will prevail. In such case the demand of the vendor and the offer of the purchaser are supposed to be influenced in an equal degree by the quantity which both believe to be the subject of their bargain : a ratable abatement of price will probably leave both in nearly the same relative situation in which they would have stood if the true quantity had been originally known. Hill v. Buckley, 17 Ves. 401. Sugden 231. Such sale must be considered as in fact and according to the intention of the parties, though not expressly, a sale by the acre.
But if, on the other hand, the sale be clearly one in gross, it is a contract of hazard, in which each party takes on himself the risk of excess or deficiency, and there can be no relief afforded to either, whatever may be the actual quantity in the tract sold. Keytons v. Brawfords, 5 Leigh 47. But the court will always require clear proof that the vendee did agree to take the. hazard of deficiencies on himself. Jolliffe v. Hite, 1 Call 329. Nelson v. Matthews, 2 Hen. & Munf. 164. Hull v. Cunningham's ex'or, 1 Munf. 330.
Where the words more or less are annexed to a contract for the sale of land by a specific number of acres, the parties are entitled to a compensation for deficiency or excess in that quantity, beyond what may be reason *15 ably imputed to small errors from variations of instru- . . . . 1 . ments or otherwise : but where the real contract is to sell a tract of land as it may contain more or less, fully understood to be so, the purchaser takes the tract at the risk of loss by deficiency in the number of acres contemplated, and no compensation can be had. Jolliffe v. Hite, 1 Call 329. Sugden 231.
Where the contract does not specify the number of acres sold or contracted to be sold, otherwise than by the general words “ containing so many acres,” this can hardly be looked on as a warranty of the quantity, but rather as a matter of description. Keytons v. Brawfords, 5 Leigh 48.
The written evidence of the contract which the heirs of the vendee seek to enforce in this case, is to be found in the title bond. By that instrument Russell the vendor binds himself and his heirs to Keeran the vendee, in the penalty of £ 1300. conditioned to make a good and sufficient deed or title “ to a certain plantation situate on Thom’s Broolc, containing 405 £ acres be the same more or less,” at the court next succeeding the last pay ment made for said plantation.
The plaintiffs in their bill charge that this was a sale by the acre, and not in gross. The defendant in responding to this charge says that it was not a sale by the acre, but in gross, and that the vendee agreed to take the land at £ 650. for 405£ acres more or less, rather than to be at the trouble and expense of having it measured: that he offered to have it surveyed, and to sell it to him by the acre or by the lump, and Keeran preferred taking it by the lump, as he was to be at the expense of having it measured. He also says that Keeran sold 100 acres of the tract for £ 400. and he admits that on laying off that 100 acres, it was ascertained that the tract fell short considerably. From a survey made in the cause it appears that the tract only contained 289f acres.
*16 Taking the case on the original bill and answers and the title bond, I think the sale should be considered as one in gross, in which the vendee took the land on the hazard of quantity. The defendant avers that the price to be paid to him for the whole tract was the gross sum of £ 650. and though the title bond does not say so, yet the statement receives countenance from the fact that the penalty of the bond is just the double of, that sum. The language of the condition is that of a sale of the tract: and the answer avers it to be a sale in gross, and until it is disproved, it is entitled to full weight.
The plaintiffs filed an amended bill, in which they aver that the plantation on Thom’s BrooJc is the same which was conveyed to Russell in 1782 by two deeds, one from Dull and wife for 400 acres, and the other from Mach and wife for 5£ acres, and that these two tracts united formed what is called in the title bond a certain plantation on Thom’s Brooh; that these two deeds contain positive assurances that the tracts contain the quantities specified therein; that the contract between Keeran and Russell was for the quantity of 405J acres, and was a purchase by the acre; and it is the whole of that plantation which the plaintiffs require to be conveyed to them, as described in those two deeds, according to the metes and bounds thereof. They pray, that Dull’s representatives may be made parties; and general relief.
The defendant James Russell, in answering this bill, refers to his former answer as containing the real principles of the contract. He avers- that Keeran made a good bargain, whether there was a deficiency or not, and that defendant is willing to rescind it. He denies his liability for any deficiency, and if not liable, deems it unimportant whether Dull is liable to himself.
The survey which was taken in this cause by order of the chancellor shews that the lines of Dull’s deed to Russell differ essentially from those by which the plan *17 tation on Thom’s Brook is now held: the metes and bounds of Bull’s deed embrace more land, and that is the cause of the deficiency. The surveyor certifies that the land so thrown out of the new survey belongs to Wendell and others, and is held by an older deed.
If the plantiffs had averred and proved that the contract between Keeran and Russell was for the tract on Thom’s Brook according to the metes and bounds of Bull’s deed, then I should have thought that the vendor was bound to convey the whole of the 405-|- acres according to those metes and bounds, or that if he could not so convey (because 116 acres of the tract were held by others claiming under a paramount title) he would then be liable to an abatement of the price for the deficiency. The case would then be like that of Hull v. Cunningham, 1 Munf. 330. and Hill v. Buckley, 17 Ves. 401. It would have been a case in which, though the sale was not professedly by the acre, yet substantially and according to the intention of the parties it would be such a sale.
But such a case is not made out by the pleadings or proofs. It is not even alleged that Russell held possession according to the metes and bounds of Bull’s deed. For aught we can tell, these 116 acres were never in possession of Russell, though attempted to be conveyed to him by Bull; and if so, the purchase of them by Keeran would be the purchase of a pretensed title as to that part of the land, which can never be enforced by a court of equity, and cannot be presumed to have been the actual contract between the parties.
The plaintiffs then have failed to shew that the sale was one by the acre: and the defendant has proved by Wendell that it was actually a sale in gross, and that Keeran took the hazard of quantity on himself. This testimony is admissible, if there is an ambiguity in the terms of the title bond. Nor do I think that the objection to the competency of Wendell is a good one. tie *18 is the husband of one of the heiresses of Dull, who conveyed the land to Russell with general warranty. It is said that if Keeran recover from Russell, this latter may then recover from the heirs of Dull, and that those heirs are interested in preventing a recovery from Russell. I do not think that this contingent interest would render those heirs incompetent. The decree in favour of Keeran against Russell could not be given in evidence in a suit by the latter against Dull’s heirs, except for the purpose of proving the fact of the recovery. The liability of Dull’s heirs would depend, not on the decree obtained by Keeran, but on the covenant contained in the deed from Dull to Russell, which is altogether a distinct matter.
On the whole, I am of opinion that the decree should be reversed with costs, and that the cause be remanded to the circuit court for further proceedings to be had therein; with directions to that court to order an account (if necessary) of the balance remaining due of the £ 650. originally contracted to be paid by Keeran to Russell, in taking which account Keeran’s representatives should not have credit for the ¿£100. deposited with Williams, from the time of the deposit, but only from the time when it was actually paid to Russell: that a decree be rendered against Keeran’s representatives for that balance : and that on the payment of that balance by the representatives of Keeran to those of Russell, or to his assignee, the heirs of James Russell be decreed to convey to the appellees, with special warranty, the 289 acres and three roods of land on Thom’s Brook, according to the survey heretofore made in this cause.
Cabell, J.
I am of opinion that the decree of the chancellor, of the 18th December 1828, is wholly erroneous. It declares that although the sale of the land was a sale in gross, yet it was not a sale of hazard as to quantity. This is contrary to first principles; for *19 every sale of land in gross or by the tract is, ex vi termini, a sale of hazard as to quantity; the vendor being debarred from claiming any addition to the purchase money, in case the real quantity of the land shall be found to exceed the estimated quantity, and the vendee being debarred from claiming any diminution of the purchase money, in case the real quantity shall fall short of the estimated quantity. I am also clearly of opinion that the sale in this case was a sale in gross, and consequently that although the land has turned out, on actual survey, to be about one hundred acres short of the estimated quantity, yet the vendee is entitled to no abatement of the purchase money, but is bound to pay the whole thereof, with interest, except such part or parts thereof as may have been already paid.'
I am also of opinion that the chancellor erred in directing the £, 100. deposited with Williams, to be applied as a payment in part of the land at the time when it was deposited. It ought not to be applied as a payment at all, unless it has been actually received by Russell, and even in that case it should not be applied as a payment, until the time when it was received.
The final decree, having proceeded on the erroneous principles established by the interlocutory decree, is erroneous also. Both of these decrees, therefore, ought to be reversed with costs, and the cause remanded, to be proceeded in according to the principles now declared. «’
Decree reversed with costs, and cause remanded for further proceedings.